Good morning, Your Honors. The accused in court, Ben Weisinger, on behalf of the petitioner, Jose Cornejo-Villagrana. Your Honors, this may be an issue of first impression for the courts. In utilizing the modified categorical analysis, we have two different parts of the record of conviction that point in two different directions to the statute. On one hand, you have the misdemeanor designation, which the immigration judge held controlled. And therefore, because it was my client's conviction was designated to Class I misdemeanor, he therefore must have been guilty of violating Subsection A1 of 1203 of the Arizona Provided Statute. He's convicted of Subsection I, right?  I asked a question. That's a great question. What exactly was he convicted of? Because the admitted entry doesn't list the subsection. The misdemeanor designation, Class I misdemeanor, would seem to say it was Subsection A1. But the factual basis that was accepted by the trial court, the criminal court, suggests that it was A3. Was this challenged earlier? Specifically, which class of misdemeanor he was convicted? That's been the challenge all the way along. I don't think that the question might not have been posed the same way that I'm posing it. But the record definitely points in two different directions. And this court has utilized both methods, both of the criminal classification of the misdemeanor and the plea colloquy to determine, using the modified analysis, which subsection was violated. Now, are you saying that the documents, the evidence, records, the list of documents that we can consider in figuring out what the crime was? That is correct. So you're saying you're inconsistent? That is exactly what I'm saying, Your Honor. Okay. So how is the plea agreement? Are you saying that he was charged with violations under 1 and then he fled to something else? Is that what you're saying? He was charged with a felony, right? But then he fled to an amended complaint, and there's no amended complaint in the record. And that's not unusual. And then he was found guilty of Class 1 misdemeanor, violation of Arizona Revised Statutes 13-203, no subsection listed on them in an entry. And this court, in both Fernandez-Ruiz and U.S. v. Cabrera-Perez, looked at the Sherwood documents. And in Fernandez-Ruiz, they looked at a people who was classified whatever misdemeanor, so it must have been under 8-1. Whereas Cabrera-Perez looked at the actual basis accepted by the trial court and found that it distracted the language in a specific subsection. And so he said that that was the proper utilization of the modified analysis. And what we have here are two different – the misdemeanor classification says one thing, but the prescript of the colloquy says another. Why can't we, under the modified categorical approach, use the transcript of the colloquy in page 193 of the excerpts, where the defense lawyer says for the substantial basis, in fact, that Mr. and Mrs. Corneille were fighting and her son's got involved, and Mr. Corneille inserted a superlative argument at one point as she was going down the hallway. Mr. Corneille either punched or pushed her in the back of the head. He did this with the intention to insult her or provoke her because they had been fighting, and they are married and didn't have father and mother together at the time, but there was an order of protection against them there, so they married. Why wouldn't that be okay to use under Shepard and Taylor, and why wouldn't it establish that it was domestic and it was violent? It establishes the domestic part, and the petitioner has never argued against that, Your Honor. The problem is it doesn't establish that there was an intent to cause or cause physical injury, which is an element that's actually required under subsection A-1. Now, the intent to insult or provoke is only found under subsection A-3. Did you just have a second? Well, I'm not sure. Is that intent still required after the Supreme Court decision, and was he? It is because the which intent would tell us under which subsection of A, under 1203-A, my client was found guilty of violence. We have subsection A-1, which is a knowingly or intentionally causing physical injury. There's no knowing or intent to cause physical injury in the facts of the case  Are you distinguishing the need and intent to cause injury, just the intent to insult or provoke? And that's right, Your Honor. That tracks exactly with the language under 1203-A-3, which is simply an unearthly structure. Does it have to be an intent to injure as opposed to insult or provoke, or those divisible are they means? The intent to injure is actually not part of any of the subsections. It's not part of A-1, 2, or 3. A-1 says intentionally causes physical injury. Causes, right? So that's not part of the factual basis that was found by the trial judge. The factual basis tracks with the language in A-3, which is not a crime of violence. There's no physical force involved. The factual basis should and must control the outcome of this matter, because if it does not, then the court would be depriving my client the benefit of the bargain and the sentencing proceedings. He and his lawyer made this agreement to plead guilty to this specific crime under this specific factual basis. It tracks the language in 1203-A-3, and for us later on, for the immigration judge and the board of the firm to say, well, no, it actually tracks with, it's actually in misdemeanor A-1, and I wonder if that really matters. This was under the modified categorical approach since the federal generic crime is just use, attempted use, or threatened use of physical force of violent nature, and he admitted punching or pushing the back of her head. I would say there's a big difference between a push and something that's actually violence where a bone can be broken or something to that effect, and that's kind of the point, that if something is broader than what a crime of violence is, it does not have to qualify. All right. So you said there was laws changed on this. So is 1312-A-3 a categorical crime of violence? No, it's not. Why? Because it only requires a touch. Okay? It only requires a touch with the intent to insult or provoke. Okay. So is it divisible? I would say it is not, Your Honor, because the knowing and touching part is the physical action. It is not violent physical force. No. Is this, are these means or are they elements? Well, the intent to insult or provoke would probably be different means. I don't think a jury would have to decide what exactly my client actually, his intent actually was. All I'm saying is that that's the language that he pled guilty to, and so we don't know exactly what his intent was. Now, we know that in the board's decisions, and the government points out, well, the intent doesn't matter as long as the intent is to cause injury. Well, if the intent found on a factual basis tracks subsection A-3, then he couldn't have been found guilty of violating a board. Could you talk a little more about that Supreme Court decision that Judge Peterson mentioned was U.N. v. United States? I guess you're under government, I don't understand why that doesn't damage or destroy your argument. Well, the Supreme Court was dealing there with a very specific statute related to, you know, gun control, and the statutory language that they dealt with was whether. . . It doesn't seem any different from what it seems like Congress says. We don't want domestic violence, perpetrators, possessing weapons, and we don't want them in the country. Well, to that I would respond to two things. First, under Huacin, my client would not be able to assess a gun. I would agree with you there. But it's a far crime from a misdemeanor, a crime of domestic violence, to a crime involving actual violent physical force, which is required for a crime of violence under 18 U.S.C. 16a. I say that there's a big difference. The Supreme Court in Huacin specifically said that we're not addressing that issue. But they're not looking at what definition of a crime of violence is according to 18 U.S.C. 16a. All they're looking at is whether Congress intended to close this loophole that allowed misdemeanor domestic violence offenders to maintain the right to carry weapons, and this is how Congress decided to close that loophole in the gun control laws. That has nothing to do with what is a crime of violence under 18 U.S.C. 16a, and that's the analysis here. Now, are you saying that not even Fernandez-Reeds remains good law? I'm sorry, Your Honor. Are you saying that Fernandez-Reeds remains good law? Fernandez-Reeds does remain good law. But I want to walk that back a little bit. I'm out of time, and on page 13 of my brief, I state that actual physical injury under 18.1 would be a crime of violence, except that in further review of that, in reviewing the definition of actual physical injury, according to Arizona, it's impairment of a physical condition. And in the case I gave to you in my letter brief yesterday, a spit on the face qualifies as any impairment of physical condition. I don't know how that is a crime of violence. So it was not briefed to the board, and it may not be right for this court to consider, but at least the question is out there that does how Arizona defines a physical injury actually qualifies as a serious physical injury, like in the court considered a crime of violence. So I'm not looking at it. It may look like 273.5, requiring a traumatic condition, which would appear to be a far cry from a spit on the face or a push. I suspect that the NRO argued, well, okay, maybe it was a crime of violence, but it was certainly a crime of domestic violence. Most likely. So it was a crime of domestic violence, which would also be a ground for its removal, wouldn't it? Well, according to Congress draft in 237.82 EI, they specifically referred to a crime of violence defined in 18 U.S. v. 16, and so that's the definition we have to use. Is it a crime that involves the actual or threatened use of physical force? And is it being used to be intentional or? It does, Your Honor. And that's according to Gil Powell and Franis Ruiz and Johnson. Okay. And you're saying that same provision would apply equally to the crime of domestic violence? It has to. That's what we're stuck with here. Had Congress drafted it saying something more like the Bossie statute, right, if Congress had drafted 237.82 EI, I'm sorry, the EI and A sites instead of the U.S. v. 16 going back and forth, we don't follow. If Congress had drafted that domestic violence statute, EI and A, to say any state crime involving domestic violence, then I think we're not here to do that. I think that the case law is very clear that it doesn't qualify, but that's not the case. That's not the statute. We're dealing with criminal violence in 18 U.S. v. 16. I think you get some of your way forward. I appreciate it. I know we were asking a lot of questions. Thank you.  Good morning, Your Honor. My name is Kirsten Nantes. The court is Roy Farrell on behalf of the Attorney General. I would just like to start with what Petitioner was convicted of. On page 395 of the record, it states that Petitioner was convicted of a Class I misdemeanor. And under the Arizona statute, in subject to me is an assault committed intentionally or unknowingly pursuant to Subsection H of the record, page 395 at the very top. This is C.R. 2 as an end, and then right under that, Class I misdemeanor. And then the Arizona statute in Subsection B, that's the 13-1203B, states that assault committed intentionally or unknowingly pursuant to Subsection A, Paragraph 1, is Class I misdemeanor. So you know it was Subsection I rather than, if it's going to be Subsection I rather than Subsection III, the insult or the misdemeanor? Because we have evidence that he was convicted of a Class I misdemeanor, and under the Arizona statute, only A1 is a Class I misdemeanor. If you keep going on to Subsection B, it says assault committed pursuant to Subsection A, Paragraph 3, that's the more offensive touching, is a Class III misdemeanor. What do we do with the fact that he put a signal to Clay, and he, an actual basis for the Clay, was that he did not intend to harm, injure, or anything like that, just to exalt or promote what he was doing? Well, my response, I'll give you a second. And what do we do with that? The trial court judge accepted the actual basis and accepted the Clay to a Class I misdemeanor, and I would also say that the focus is on the foreshoes, not the petitioner's intent. But when we're looking at the crime of violence, we're looking at the foreshoes, lodges, intents that they did in here. He caused physical pain or injury, which satisfies B-1, so both are B-1. What you'll do is you look at the clerk's record, what his conviction was, it says Class I misdemeanor, and then you look at 13-1203B, and it says assault committed intentional or not only pursuant to Subsection A, Paragraph I, Class I misdemeanor. So you would draw the inference that if the judgment says that Class I misdemeanor, then it must have been under 1203B, which means it has to be under Paragraph I, and that would be causing physical injury. It's runner. Okay, I got it. And using the modified categorical approach, we're saying we look behind the record of conviction and look at the facts. So here we have, you know, it says he was convicted of a Class I misdemeanor and under the Arizona statute. When the judge used those words, intent to injure, insult, or provoke, it would not change anything. I know. This is that Subsection A3, rather than A1. In other words, there's no reason to talk about whether it was insulting or provoking unless it's in A3. Right, and we know from the record that he was actually convicted of a Class I misdemeanor. Right, so on the basis of this plea agreement, this confidential predicate, I'd be very confident. I don't think you'd be very, but they are in confidence. And you're just seeing that when you look at all these documents, there's a modified categorical approach, and it's just more persuasive. It's look at the actual conviction, document of conviction as opposed to the factual predicate. Right, and I would assume, Your Honor, I don't handle these types of cases, but if he had a problem with what he was convicted of, that should have been resolved years ago. If his factual basis did not track with his actual conviction as a Class I misdemeanor, that's something that should have been challenged years ago. And so what we have now is that we know he was convicted of a Class I misdemeanor, which under the Arizona statute can only make up this paragraph, A1, which is a crime of violence. I have one. Even if it isn't, did you declare it as a crime? So it has to be a crime of violence or a crime of domestic violence, which I'm not very familiar with. Because INA refers to 18 U.S.C. Section 16, the crime of violence definition. Right, the Domestic Violence Conviction, at least under state statutes I'm familiar with, can often be non-violent, such as, I was afraid of him. Such as what, excuse me? I was afraid of him. You know, and it's not... I was afraid of him. Right, and the Arizona statute has different sections that they can charge people under different sections, and the 28-J, I submit, that shows some recent Arizona cases, and everyone charged under A1 used violent force, whether it's shooting someone, hitting them on the head, just because a person sustained a laceration, you know, not just... So basically, a white waiter, you could convict under either the assault statute or the domestic violence statute. Somebody never touched his wife, but he just scared her. So you can convict under the domestic violence statute, but not the assault statute. I'm not sure, Your Honor. Here, we're talking about the conviction under the assault statute, and Arizona strings their statutes together, so one of the statutes was the domestic violence. I believe it's 13-3601 that designates the domestic relationship with regard to the assault. Thank you. So if the court has any further questions... Is there any... Did he commit any other crimes that would render him removable? He did have several other convictions. Nothing was... This was his only charge of removability, but there were other convictions. I believe a DUI offense. So I'm not sure if there's anything that would render him... Anything else that would render him removable, but this, the domestic violence offense, is the only charge around his removability. Counsel, will you address the petitioner's argument that... that Mr. Cornejo had been challenging all along  convicted under, I think, Class I misdemeanor versus Class III misdemeanor? Your Honor, I... I mean, his argument that his conviction only reflects that exercise of the court's discretion and how he charged him, that was not exhausted. I am not exactly sure about your particular question about under A3. Well, I did ask the petitioner's counsel whether it were... I didn't ask where in the record I should have, but whether the record reflected that Mr. Cornejo had, in fact, challenged that he had been convicted of a Class I misdemeanor. And counsel, as I understood him, said he had always challenged that he had been convicted of a Class I misdemeanor, and I was curious about your take on that. I'm not... As he said, I think he's being accurate that maybe it wasn't in the phrase exactly the same way. When you asked that question, I was looking through the record to try to find the answer to that. Yeah, and Your Honor, on page 412 of the record, that is Petitioner's Motion to Terminate at the bottom, it says Mr. Cornejo was convicted pursuant to Arizona Revised Statute 13-1203-A1. What page is that? 412. At the bottom, it starts with Mr. Cornejo. So at least at that point, before the immigration judge does appear, just from a quick glance at the record, that he was conceding that he was convicted under A1. I'm just curious, he was convicted when? 2008? Yes, Your Honor. And the MTA was issued when? He was convicted November 6, 2008, and the MTA was issued December 8, 2008, so just about a month later. Okay, so it's taken nine years. This case was fully briefed in 2014, so we'll kind of brush up a little bit on the case, on the changes. It says, are there any changes in circumstances? There's sympathies here, obviously, yes, and some wives, and yes, and some children. Have there been any changes in the nine years? I have not been informed of any personal changes with Petitioner. I see my time is up, so there are no further questions. Thank you. All right, thank you. Your Honor, we've come to the end of this session. Thank you for participating. We hope you found it to be worth your wait, and we look forward to hearing from you for your future sessions. If you have any further questions, please let me know, which I will take up. Thank you for having me for the rest of the session.
judges: Kleinfeld, Wardlaw, Peterson